1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11   TRIAD MECHANICAL, INC., an    )
     Oregon corporation,           )
12                                 )
                     Plaintiff,    )
13                                 )    No.  CV-07-516-HU
          v.                       )
14                                 )
     COATINGS UNLIMITED, INC., a   )
15   Washington corporation,       )
                                   )
16                   Defendant,    )
                                   )
17   and                           )    FINDINGS & RECOMMENDATION
                                   )
18   ROYAL SURPLUS LINES INSURANCE )
     CO.,                          )
19                                 )
                     Garnishee.    )
20   ──────────────────────────────)

21   Michael E. Farnell
     Spencer S. Adams
22   PARSONS FARNELL & GREEN, LLP
     1030 S.W. Morrison Street
23   Portland, Oregon 97205

24        Attorneys for Plaintiff

25   Gary U. Scharff
     621 S.W. Morrison Street, Suite 1300
26   Portland, Oregon 97205

27        Attorney for Defendant

28   / / /

     1 - FINDINGS & RECOMMENDATION

Richard A. Lee
BODYFELT MOUNT STROUP & CHAMBERLAIN LLP
707 S.W. Washington Street, Suite 1100
Portland, Oregon 97205-3528

    Attorney for Garnishee

HUBEL, Magistrate Judge:

    Plaintiff Triad Mechanical brought this action against defendant Coatings Unlimited, Inc., in Multnomah County Circuit Court. Plaintiff, a successful bidder for a construction project for the City of Portland, alleged that defendant, a subcontractor of plaintiff's on the project, was negligent and had breached its contract and warranty. Exh. A to Notice of Removal at pp. 7-10.

    The state court litigation, originally filed by plaintiff on April 17, 2006, resulted in a settlement, followed by a stipulated judgment naming plaintiff as the judgment creditor and defendant as the judgment debtor. Id. at pp. 41-43. The principal amount of the judgment is $100,493.37, with an additional amount of $59,506.63 for attorney's fees. Id. The judgment was entered in Multnomah County Circuit Court on February 2, 2007.

    On February 26, 2007, plaintiff served Royal Surplus Lines Insurance Co., with a writ of garnishment, asserting that Royal was obligated to pay the judgment in favor of plaintiff and against defendant by virtue of an insurance contract between defendant and Royal related to the construction project. On March 9, 2007, plaintiff filed formal "Allegations Against Garnishee" in Multnomah County Circuit Court. Id. at pp. 44-49.[1]

---

[1] On May 22, 2006, approximately five weeks after initially filing the state court action against Coatings, plaintiff filed an action in federal court against St. Paul Fire and Marine Insurance Co., another of Coatings's insurers. The case, No. CV-

2 - FINDINGS & RECOMMENDATION

1    Royal removed the action to this Court on April 6, 2007.

2    Plaintiff moves to remand the case back to state court. I

3    recommend that the motion be granted.

STANDARDS

5    Generally, "any civil action brought in a State court of which

6    the district courts of the United States have original

7    jurisdiction, may be removed by the defendant or the defendants, to

8    the district court of the United States for the district and

9    division embracing the place where such action is pending." 28

10   U.S.C. § 1441(a); Matheson v. Progressive Speciality Ins. Co., 319

11   F.3d 1089, 1090 (9th Cir. 2003) ("Any civil action may be removed

12   to federal district court so long as original jurisdiction would

13   lie in the court to which the case is removed.").

14   "The burden of establishing federal jurisdiction is on the

15   party seeking removal, and the removal statute is strictly

16   construed against removal jurisdiction." Prize Frize, Inc. v.

17   Matrix (U.S.), Inc., 167 F.3d 1261, 1265 (9th Cir. 1999), overruled

18   on other grounds, Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676

19   (9th Cir. 2006).

20   The notice of removal of a civil action must be filed within

21   thirty days after the receipt by defendant of a copy of the initial

23   06-740-MO, is assigned to Judge Mosman. On June 27, 2006, St.
     Paul brought a third-party complaint against Coatings. Plaintiff
24   added Royal as a defendant in that case on September 28, 2006.
     The settlement of the claims against Coatings in the state case
25   was actually part of a more global settlement of the claims
     plaintiff brought against St. Paul, and the claims St. Paul
26   brought against Coatings, in the federal case. Exh. 3 to May 1,
     2007 Affid. of Richard Lee in Opposition to Motion to Remand.
27   The insurance coverage claims brought by plaintiff against Royal
     in the federal case are still pending before Judge Mosman.
28

3 - FINDINGS & RECOMMENDATION

1  pleading setting forth the claim for relief, or within thirty days
2  after the service of summons upon the defendant if such initial
3  pleading has then been filed in court and is not required to be
4  served on the defendant, whichever period is shorter.  28 U.S.C. §
5  1446(b).

6                              DISCUSSION

7        Plaintiff raises three arguments in support of the motion to
8  remand:   (1) Royal waived its right to remove by virtue of the
9  "service of suit" provision in the insurance contract; (2) Royal's
10  removal is untimely under the "first served defendant rule"; and
11  (3) a federal court would not have original jurisdiction over this
12  case and if it did, such jurisdiction is "reverse preempted" by the
13  McCarran-Ferguson Act.  I address plaintiff's arguments in turn.
14  I.  Service of Suit Clause

15        Under the contract between plaintiff and Coatings, Coatings
16  was required to obtain several types of insurance, including a
17  Comprehensive General Liability policy.  Exh. 3 to Apr. 17, 2007
18  Declr. of Michael Farrell at p. 7.  Coatings was also required to
19  name plaintiff as an additional insured on all policies.  Id.

20        Royal issued insurance policies to Coatings related to the
21  project.  Exh. A to Notice of Removal at pp. 50-142.  Two policies
22  appear to be at issue in the state litigation between plaintiff and
23  Coatings.  Id.  They apparently are identical commercial lines
24  policies with effective dates of April 1, 2001, and April 1, 2002.
25  Id. at pp. 50, 95.  Both policies contained the following "service
26  of suit" endorsement:

27          In the event of our failure to pay any amount claimed to
            be due, we, at your request, will submit to the
28          jurisdiction of any court of competent jurisdiction

4 - FINDINGS & RECOMMENDATION

1
2
3
within the United States of America or Canada and will
comply with all requirements necessary to give such court
jurisdiction and all matters arising hereunder shall be
determined in accordance with the law and practice of
such Court.

4   Exh. A to Notice of Removal at pp. 71, 136.

5       Royal does not dispute plaintiff's assertion that federal

6   courts have interpreted near-identical provisions as compelling the

7   insurer to submit to the forum chosen by the insured who sues to

8   recover proceeds owing under the policy.  E.g., 909 Geary St., LLC

9   v. Admiral Ins. Co., No. C 01-4374 JL, 2002 WL 253946, at *2 (N.D.

10  Cal. Feb. 8, 2002) ("[b]y including a service of suit clause in the

11  insurance policy, Defendant effectively waived any right to seek

12  removal . . . making Defendant's removal wrong as a matter of

13  law."); Monticelli v. Homestead Ins. Co., No. C-96-4312-VRW, 1997

14  WL 88379, at *1 (N.D. Cal. Feb. 14, 1997) ("A service of suit

15  provision generally acts as a wavier of the insurer's right of

16  removal."); Perini Corp. v. Orion Ins. Co., 331 F. Supp. 453, 454

17  (E.D. Cal. 1971) (noting that most courts have determined that

18  language in service of suit provisions in which insurers agree to

19  "submission" to a state forum, acts as a waiver of the insurer's

20  right to defend in federal court); see also Pelleport Investors,

21  Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 280 (9th Cir.

22  1984) (affirming district court's remand of case to state court

23  based on parties' forum selection clause).

24      Royal, however, argues that the service of suit provision does

25  not require remand in this case because it is plaintiff, as

26  garnishor, and not Coatings, the insured, invoking it.  Royal

27  correctly notes that the cases plaintiff relies on, and cited

28  above, holding that a service of suit provision acts as a waiver of

5 - FINDINGS & RECOMMENDATION

1  the insured's right to remove the case to federal court, concerned
2  the application of the service of suit provision by the insured
3  against the insurer.  Royal contends that by its terms, the clause
4  does not extend to actions instituted by judgment creditors and not
5  involving the insured.

6      I reject Royal's arguments for the reasons offered by
7  plaintiff:  (1) as a garnishor, plaintiff steps into Coatings's
8  shoes; and (2) as an additional insured, plaintiff is entitled to
9  bind Royal to the terms of the clause.

10     The Royal policies at issue state that "the words 'you' and
11 'your' refer to the Named Insured shown in the Declarations, and
12 any other person or organization qualifying as a Named Insured
13 under this policy.  The words 'we', 'us' and 'our' refer to the
14 company providing this insurance."  Exh. A to Notice of Removal at
15 pp. 78, 100.  The service of suit endorsement, together with this
16 definition, reads as follows:  "In the event of Royal's failure to
17 pay any amount claimed to be due, Royal, at Coatings's request,
18 will submit to the jurisdiction of any court of competent
19 jurisdiction . . . ."

20     The garnishment action allows plaintiff to become Coatings for
21 the purposes of enforcement of the insurance policy Coatings had
22 with Royal.  A "[garnishment] proceeding is, in substance,
23 equivalent to an action on the policy in which plaintiff stands in
24 the shoes of the insured." Griffith v. Safeco Title Ins. Co., 107
25 Or. App. 270, 272, 812 P.2d 420, 421 (1991) (further noting that
26 because the judgment creditor stood in the shoes of the insured,
27 the insurer was entitled to assert the defenses that it might have
28 had in a direct action by the insured); State Farm Fire & Cas. Co.

6 - FINDINGS & RECOMMENDATION

1  v. Reuter, 299 Or. 155, 166, 700 P.2d 236, 243 (1985) (garnishor
2  stands in shoes of judgment debtor).

3      Although the parties have cited no cases, and I have found
4  none, expressly addressing the enforceability of a service of suit
5  provision by a garnishor, because the law recognizes that the
6  insurer can assert policy defenses against the garnishor, it must
7  recognize reciprocal policy enforcement by the garnishor against
8  the insurer.    Thus, by standing in the shoes of the "Named
9  Insured"/judgment creditor, plaintiff may assert the service of
10 suit provision against Royal.  Accordingly, Royal has effectively
11 waived its right to remove the case from state court to this Court.

12     Additionally, as plaintiff notes, plaintiff is an "Additional
13 Insured" under the Royal policies.  Exh. A to Notice of Removal at
14 pp. 54, 116.  Other courts interpreting similar policies defining
15 "you" and "your" as the named insured, have concluded that the
16 "you" and "your" terms include additional insureds.

17     The most comprehensive discussion is by the Tenth Circuit in
18 Marathon Ashland Pipe Line LLC v. Maryland Cas. Co., 243 F.3d 1232
19 (10th Cir. 2001).   The case concerned an action by additional
20 insureds against a commercial general liability insurer for
21 declaratory judgment of the insurer's duty to defend a personal
22 injury action brought by a temporary worker who was hired by the
23 named insured at the additional insured's request.   The insurer,
24 relying on a definition of "you" and "your" which is identical to
25 the definition in the Royal policies at issue here, argued that all
26 of the provisions, exclusions, and definitions within the policy
27 which used the term "you," applied only to the named insured.  Id.
28 at 1241.

7 - FINDINGS & RECOMMENDATION

1    The court rejected the argument and held that under Wyoming

2  law, an "additional insured" was also a "named insured" within the

3  meaning of the policy.  The court explained:

> Under the policy language and in the Marathon
> endorsement, it is not clear that "you" as used in the
> policy excludes additional insureds.  The endorsement
> adding Marathon as an additional insured stated "WHO IS
> AN INSURED (Section II) is amended to include as an
> insured the person or organization shown in the
> Schedule." . . . . This amendment, by its own language,
> adds Marathon as an "insured," and does not relegate it
> to a lesser status than named insureds under the policy.
> Moreover, Section II does not define classes of insureds
> in terms of lesser or greater coverage.  Instead, it
> describes which persons related to the insured are
> included under the policy. In paragraph 1 of Section II,
> for example, the policy reads: "if you are designated in
> the Declarations as an organization . . . you are an
> insured. Your 'executive officers' and directors are
> insureds, but only with respect to their duties as your
> officers or directors." . . . . Reading the policy as
> excluding additional insureds everywhere the word "you"
> is employed would make the policy's coverage amorphous,
> leaving additional insureds open to all sorts of
> unanticipated exclusions.  The purpose of provisions to
> add insureds is 'to extend the policy coverage to others
> . . . not to change the nature of the coverage.

Id. (internal quotation and citation omitted).

    The Additional Insured endorsements in the Royal policies

contain the identical language regarding the amendment of Section

II of the policies.  Exh. A to Notice of Removal at pp. 54, 116

("WHO IS AN INSURED (Section II) is amended to include as an

insured the person or organization shown in this Schedule . . .

."). As in Marathon, the amendment, "by its own language," adds

plaintiff as an insured and "does not relegate it to a lesser

status than named insureds under the policy."

    As in Marathon, Section II of the Royal policies does not

define classes of insureds in terms of lessor or greater coverage

but instead, as in Marathon, describes which persons related to the

8 - FINDINGS & RECOMMENDATION

insured are included under the policy. Id. at pp. 84, 106. Thus, as in Marathon, reading "the policy as excluding additional insureds would make the policy's coverage amorphous, leaving additional insureds open to all sorts of unanticipated exclusions."

The Marathon court also noted that the use of the word "you" "in connection with the entire policy . . . does not place additional insureds on notice that they are excluded from its provisions." Id. The court explained that the insurer "could have included a plain statement in the endorsement that additional insureds were to be treated differently under the policy than named insureds through the use of the word 'you.'" Id. The court continued its discussion by remarking that "[a]lternatively, [the insurer] could have included a plain statement in the preamble, in Section II, or in the endorsement specifying that additional insureds do not qualify as named insureds." Id. at 1241-42. The court stated that "[a]bsent such a clear conclusion, the policy is at least ambiguous whether 'you' includes endorsed additional insureds." Id. at 1242.

The court then turned its attention directly to the policy's preamble which stated, identically to the Royal policies, that "'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." Id. The court noted that for the reasons explained, the entire policy, when read as a whole, was ambiguous as to whether the preamble's language "differentiates an additional insured . . . from a named insured." Id.

The court stated that given that the endorsement could reasonably be interpreted as qualifying Marathon as a named

9 - FINDINGS & RECOMMENDATION

insured, and therefore, including Marathon within the scope of "you" as used in the policy, the policy must be interpreted in Marathon's favor under Wyoming law. Id. at 1241-42.

Cases from other jurisdictions have reached a similar conclusion. In Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co., 126 F.3d 886, 892 (7th Cir. 1997), the court construed a policy provision stating that "you" and "your" refer to the "Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy," as including an additional insured under Illinois law.

In Wyner v. North American Speciality Ins. Co., 78 F.3d 752, 755 (1st Cir. 1996), the court construed the same provision appearing in a tenant's commercial general liability policy under Massachusetts law. The tenant allegedly caused damage to portions of the landlord's building that had not been rented by the debtor. The landlord, in the context of an adversary proceeding in Bankruptcy Court, asserted a third party complaint against the tenant's insurer, seeking a declaratory judgment that the tenant's insurance policy could be reached and applied for the landlord's benefit. At issue was the application of an exclusion for damage to property "you own, rent or occupy[.]" Id. at 755.

The landlord argued that the provision stating that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization," meant that as additional insureds, the exclusion did not apply to their property because as additional insureds, and not named insureds, they could not be the "you" or "your" referred to in the exclusion. The court rejected the argument because, inter alia, the sentence following

10 - FINDINGS & RECOMMENDATION

the provision equating "you" and "your" to the named insured, provided that "the words 'we', 'us' and 'our' refer to the company providing this insurance." Id. at 757. This was significant to the court because, it explained, "the ordinary and common reading of the language in this context would be to find that 'you' and 'your' were defined as the Named Insured not to draw a distinction between [the insured] and the [additional insureds], but between [the insured] and [the insurer]." Id. Thus, the property of the landlord, as an additional insured, was, under Massachusetts law, "your" property for the purposes of applying the exclusion. Id.

Similar to Wyoming, Illinois, and Massachusetts law, Oregon law regarding the interpretation of insurance contracts provides that if, after examining the text and context of the policy provision, the policy is ambiguous, meaning capable of more than one plausible interpretation, the term is to be construed against the insurer, the party which drafted the policy. Groshong v. Mutual of Enumclaw Ins. Co., 329 Or. 303, 312, 985 P.2d 1284, 1289 (1999); Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or., 313 Or. 464, 470-71, 836 P.2d 703, 706-07 (1992).

As the Marathon court recognized, "at a minimum, the use of 'you' in the policy is ambiguous as to whether it refers to additional insureds[.]" Marathon, 243 F.3d at 1241. The same conclusion is reached here under Oregon law for the reasons explained by the courts in the Tenth, Seventh, and First Circuits in the cases discussed above. Thus, because plaintiff is an additional insured under the Royal policies, it is considered a "you" or "your" for the purposes of applying the service of suit provision and Royal has effectively waived its right to remove the

11 - FINDINGS & RECOMMENDATION

1    case to federal court.  Remand is therefore appropriate.

2    II.  First Served Defendant Rule

3        Plaintiff argues that under the "first served defendant rule,"
4    Royal cannot remove the case to federal court even though it
5    removed the case within thirty days of the "Allegations Against
6    Garnishee" being filed in state court.  Under the rule, "the
7    thirty-day removal period begins to run for all defendants on the
8    date the first defendant receives the initial complaint[.]"
9    McAnally Enterprises, Inc. v. McAnally, 107 F. Supp. 2d 1223, 1226
10   (C.D. Cal. 2000).  Thus, in a multi-defendant case, the "first
11   served" rule renders the removal by a later-served defendant
12   untimely if not made within thirty days of the first-served
13   defendant's receipt of the initial complaint.

14       In a 2000 decision, I noted that a majority of courts had
15   adopted the first served defendant rule.    Ford v. GST
16   Telecommunications, Inc., No. CV-00-160-HU, Opinion at p. 13 (D.
17   Or. Apr. 7, 2000).  The Ninth Circuit, however, has not expressly
18   decided the issue.  United Computer Sys., Inc. v. AT&T Corp., 298
19   F.3d 756, 762-63 n.4 (9th Cir. 2002) (acknowledging split of
20   authority, but expressing no opinion on the issue).  A split of
21   authority exists within this District.  United Traffic Consultants,
22   Inc. v. Premium Logistics, Inc., No. CV-01-1324-JE, 2001 WL
23   34039477, at *3 (D. Or. Nov. 16, 2001) (opinion by Magistrate Judge
24   Jelderks noting that he previously recommended that the first
25   served defendant rule be rejected and that his recommendation had
26   been adopted by Judge Marsh; further noting that Judge Panner had
27   rejected the rule as well, but that Judge Redden had followed it,
28   as had I in Ford v. GST Telecommunications).

12 - FINDINGS & RECOMMENDATION

1      My decision in <u>Ford</u> analyzed the application of the rule in
2  the fraudulent joinder context.    I concluded that when the
3  defendant could discern from the complaint that a co-defendant was
4  fraudulently joined, the removal petition should have been filed
5  within thirty days of service of the complaint and the fact that
6  the removing defendant was not actually named as a party until the
7  filing of the second amended complaint six months after the initial
8  complaint was filed, did not change that result.    <u>Ford</u>, Opinion at
9  pp. 13-14.

10     What <u>Ford</u> and most of the other cited "first served defendant"
11 cases did not discuss was the situation where an amended complaint
12 so fundamentally alters the case that it should be considered a new
13 suit, re-triggering the thirty-day removal clock.    One of the bases
14 for adopting the "first served defendant" rule is the "unanimity
15 rule," which requires all defendants to join in a removal petition
16 even though they have not received a copy of the complaint.
17 <u>McAnally</u>, 107 F. Supp. 2d at 1227 (noting courts applying the
18 majority first served rule typically rely upon three reasons:  (1)
19 it follows logically from the unanimity rule; (2) forum selection
20 should be resolved as soon as possible; and (3) removal statutes
21 must be construed narrowly).

22     The <u>McAnally</u> court remarked that other courts had explained
23 the failure of the first served defendant not to remove as a
24 "waiver" of that defendant's right to remove and thus, that
25 defendant may not consent to a later-served defendant's notice of
26 removal.  <u>Id.</u> (citing, <u>e.g.</u>, <u>Innovacom, Inc. v. Haynes</u>, No. C 98-
27 0068 SI, 1998 WL 164933, at *2 (N.D. Cal. Mar. 17, 1998)).  The
28 <u>McNally</u> court further noted, however, that "an exception to this

1  rule  of  waiver  exists  when  a  complaint  is  amended  which

2  fundamentally alters a case so as to constitute a substantially new

3  suit." Id. at 1227 n.6 (citing Douglass v. Weyerhaeuser Co., 662

4  F. Supp. 147, 149 (C.D. Cal. 1987), citing Fletcher v. Hamlet, 116

5  U.S. 408, 410 (1886)).

6       Here, given the nature of a garnishment proceeding, I conclude

7  that the first-served defendant rule should not apply because the

8  garnishment  proceeding  is  so  fundamentally  different  from  the

9  underlying suit between plaintiff and defendant, it should fall

10 into the exception for the "rule of waiver" as noted in McAnally.

11 As explained in Fletcher, the thirty-day time period for removal

12 cannot be extended unless a later-served defendant is served with

13 an  amended  pleading  which  "so  change[s]  the  character  of  the

14 litigation as to make it substantially a new suit begun that day."

15 Fletcher, 116 U.S. at 410.

16      Plaintiff correctly notes that Oregon courts have described a

17 garnishment as an "ancillary remedy[.]"  Union Oil Co. of Cal. v.

18 Pacific Whaling Co., 240 Or. 151, 157, 400 P.2d 509, 511 (1965).

19 However, the Ninth Circuit has made clear that while a state's

20 characterization of its garnishment proceedings is entitled to

21 "great weight," whether a garnishment proceeding is an independent

22 civil action for the purposes of the removal statutes is an issue

23 of federal law.  Swanson v. Liberty Nat'l Ins. Co., 353 F.2d 12, 13

24 (1965) (affirming propriety of removal of garnishment proceeding

25 from state court to federal court).  Other courts have recognized

26 that "garnishment actions against third-parties are generally

27 construed as independent suits, at least in relation to the primary

28 action." Butler v. Polk, 592 F.2d 1293, 1295-96 (5th Cir. 1979)

14 - FINDINGS & RECOMMENDATION

1   (citing Swanson and cases from the Eighth and Tenth Circuits).

2        I hold that the nature of the garnishment proceeding (the
3   legal process of obtaining money or property to satisfy a judgment
4   where liability has already been determined) is so fundamentally
5   distinct from the nature of the underlying action (which determines
6   the merits of liability and damages, but not the source of the
7   funding of the judgment), that it may be said to "so change[] the
8   character of the litigation as to make it substantially a new suit
9   begun that day."   Thus, the thirty-day removal period is
10  appropriately calculated from service of the garnishment action.
11  Removal was timely.

12  III.  McCarran-Ferguson Act

13        Plaintiff next argues that because plaintiff could not have
14  originally filed the garnishment action in federal court, Royal
15  cannot remove it under 28 U.S.C. § 1441(a), and to the extent the
16  removal statute is held to preempt state statutes prescribing the
17  limited jurisdiction for garnishment proceedings, the McCarran-
18  Ferguson Act, 15 U.S.C. § 1012(b), "reverse preempts" the federal
19  removal statute.

20        In City of Chicago v. International College of Surgeons, 522
21  U.S. 156 (1997), the Court explained that

22        [a]s a general matter, defendants may remove to the
          appropriate federal district court "any civil action
23        brought in a State court of which the district courts of
          the United States have original jurisdiction." 28 U.S.C.
24        § 1441(a).  The propriety of removal thus depends on
          whether the case originally could have been filed in
25        federal court.

26  Id. at 163.

27        Plaintiff argues that while the amount in controversy here
28  exceeds $75,000, and the parties appear to be diverse, the Oregon

15 - FINDINGS & RECOMMENDATION

statutes prevent plaintiff from bringing a garnishment proceeding directly in federal court and thus, Royal should not be permitted to remove the garnishment proceeding from state court.

Oregon Revised Statute § (O.R.S.) 18.610(1) provides:

(1) Only the following courts have authority over a writ of garnishment issued for the enforcement of a judgment:

(a) The court in which the judgment to be enforced was originally entered or first registered;

(b) The circuit court for the county in which a judgment debtor resides if the requirements of ORS 18.255 have been met; and

(c) The circuit court for the county in which a debtor has filed a challenge to the garnishment under ORS 18.718.

O.R.S. 18.610(1).

Notably, under subsection (1)(a), if a judgment was originally entered in this Court, and other requirements for federal diversity jurisdiction are met, the statute appears to allow a garnishment action to proceed originally in federal court. While plaintiff is correct that in this particular case, it could not have proceeded directly into federal court because the judgment was originally entered state court, and the other subsections establish that enforcement occurs in a circuit court, it is important to note that the state statute upon which plaintiff relies does not prohibit federal jurisdiction of a garnishment proceeding in all circumstances.

Additionally, although I conclude that the garnishment proceeding is properly viewed as an action which is so fundamentally different from the underlying merits action between the plaintiff and the defendant as to justify restarting the thirty-day removal clock upon service of the garnishment action,

16 - FINDINGS & RECOMMENDATION

that does not necessarily dictate the characterization of the case as whole in regard to the portion of the removal statute addressing the federal court's "original" jurisdiction. The underlying merits action between plaintiff and defendant was removable under 28 U.S.C. § 1332 because the parties are diverse, the amount in controversy is more than $75,000, and the provisions in O.R.S. 18.610 are inapplicable to the underlying action.

Furthermore, while the relevant cases do not actually discuss the issue plaintiff raises, the holdings of the cases affirming the propriety of the removal of garnishment actions to federal court would be completely undermined by adoption of plaintiff's argument here. Without any actual case support applying plaintiff's argument in the context of the removal of a garnishment action, I am unwilling to adopt it. Thus, removal is not prohibited.[2]

I further reject plaintiff's contention that the McCarran-Ferguson Act operates as a "reverse" preemption of the federal removal statutes. The McCarran-Ferguson Act "was an effort by Congress to protect states' primary regulatory role over the insurance industry." Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill., 421 F.3d 835, 842 (9th Cir. 2005) (internal quotation omitted), amended, 433 F.3d 1089 (9th Cir. 2006).

---

[2] Even if I were to conclude that O.R.S. 18.610 renders this an action over which this Court did not have original jurisdiction, I would still conclude that removal was proper. Federal law may preempt state law under the Supremacy Clause of the Constitution in one of three ways: (1) express preemption by statute; (2) occupation of the field; and (3) conflict between state and federal law. Siaperas v. Montana State Compensation Ins. Fund, 480 F.3d 1001, 1004 (9th Cir. 2007); U.S. Const. art. VI, cl. 2. Here, O.R.S. 18.610 likely creates a conflict with the removal statute, rendering the state statute preempted.

17 - FINDINGS & RECOMMENDATION

1    The Act includes an express reverse preemption provision.  15
2    U.S.C. § 1012(b).  The section provides that "[n]o Act of Congress
3    shall be construed to invalidate, impair, or supersede any law
4    enacted by any State for the purpose of regulating the business of
5    insurance, or which imposes a fee or tax upon such business, unless
6    such Act specifically relates to the business of insurance."  Id.

7        Plaintiff argues that pursuant to this statutory provision,
8    the statutory authority governing removal of the action found in 28
9    U.S.C. §§ 1331, 1441, is reverse preempted by O.R.S. 18.352 and
10   18.610 which expressly permit attachment of insurance policies and
11   require  enforcement  of  such  garnishments  in  state  court.
12   Plaintiff's argument fails because the Oregon statutes plaintiff
13   relies on are not laws enacted by the State of Oregon for the
14   purpose of regulating the business of insurance.

15       A state law regulates the business of insurance within the
16   context of the McCarran-Ferguson Act when it addresses the "core"
17   activities  of  the  business  of  insurance  including  "[t]he
18   relationship between the insurer and insured, the type of policy
19   which could be issued, [and] its reliability, interpretation, and
20   enforcement[.]"  SEC v. National Securities, Inc., 393 U.S. 453,
21   460 (1969).  The National Securities Court concluded that an
22   Arizona statute aimed at protecting stockholders in insurance
23   companies was not preempted by the McCarran-Ferguson Act given that
24   the statute did not regulate the insurance relationship, but rather
25   the relationship between a stockholder and the company in which the
26   investor held stock.  National Securities, 393 U.S. at 460.  The
27   Court dismissed the contention that the statute's application to
28   insurance companies only rendered it a statute directed at the

18 - FINDINGS & RECOMMENDATION

business of insurance.  Id.   The Court explained that "[t]he
crucial point here is that the State has focused its attention to
stockholder protection; it is not attempting to secure the
interests of those purchasing insurance policies."  Id.

     In Department of the Treasury v. Fabe, 508 U.S. 491 (1993),
the Supreme Court reaffirmed the holding of National Securities,
and then added that the "business of insurance" in the first clause
of the statute (the portion referring to state laws enacted for the
purpose of regulating the business of insurance),[3] "consists of
laws that possess the end, intention, or aim of adjusting,
managing, or controlling the business of insurance."  Id. at 505
(internal quotation omitted).   Additionally, the "actual
performance of an insurance contract is an essential part of the
'business of insurance.'"  Id.  Thus, in Fabe, the Court held that
an Ohio statute establishing creditor priorities in proceedings to
liquidate an insolvent insurer, was a law enacted for the purpose
of regulating the business of insurance within the meaning of the
first clause of the McCarran-Ferguson statute because it was "aimed
at protecting or regulating the performance of an insurance
contract."  Id.

     The two state statutes that plaintiff argues reverse preempt
the removal statute are O.R.S. 18.352 and O.R.S. 18.610.  O.R.S.
18.352 provides that when a judgment debtor has a policy of
insurance covering liability for injury or damage to person or
property, and the injury or damage constituted the cause of action

_____

     [3]  The second clause, as explained by the Court, while using
the phrase "business of insurance," addresses the scope of
antitrust immunity.  Id. at 504.

19 - FINDINGS & RECOMMENDATION

in which the judgment was rendered, the amount covered by the policy of insurance shall be subject to attachment upon the execution issued upon the judgment. O.R.S. 18.610, quoted above, establishes which courts have authority over a writ of garnishment.

Neither of the statutes was enacted for the purpose of regulating the business of insurance. O.R.S. 18.352 regulates whether an insurance policy is subject to garnishment by a third party, namely the judgment creditor. The statute does not regulate the business of insurance in any way.

Even if O.R.S. 18.352 could be considered a statute enacted for the purpose of regulating the business of insurance, because, under Fabe, it is construed as protecting the execution of the insurance contract, plaintiff's argument still fails because O.R.S. 18.610 is not concerned with the insurance industry at all, but is a general statute addressing all writs of garnishment. And, because O.R.S. 18.610 creates the conflict with the federal removal statute, it cannot be overlooked. O.R.S. 18.610 addresses no insurer relationships and is not aimed at protecting the performance of an insurance contract. Thus, the reverse preemption provision of the McCarran-Ferguson Act does not apply to invalidate the supremacy of the removal statute.

Finally, to apply the McCarran-Ferguson Act in this case to reverse preempt the federal removal statute would mean that the United States Congress intended to give control of federal court jurisdiction in insurance matters to state legislatures, who do not mention the concept of insurance in their legislation, at least in regard to O.R.S. 18.610. Without any case support, I am unwilling to adopt plaintiff's argument. See Hawthorne, 421 F.3d at 842

20 - FINDINGS & RECOMMENDATION

1    (noting that the insurer's argument that under McCarran-Ferguson,
2    state statutes regarding the rehabilitation and liquidation of an
3    insurer reverse preempted the federal diversity jurisdiction
4    statute, "prove[d] too much" and rejecting the argument; citing
5    cases from the Tenth and Fifth Circuits holding that McCarran-
6    Ferguson was not intended to divest federal courts of diversity
7    jurisdiction).

8        In summary, although I reject plaintiff's second and third
9    arguments in support of its motion to remand, I recommend that the
10   motion be granted based on the service of suit clause in the
11   insurance contract.

CONCLUSION

13       Plaintiff's motion to remand (#3) should be granted.

SCHEDULING ORDER

15       The above Findings and Recommendation will be referred to a
16   United States District Judge for review.  Objections, if any, are
17   due July 25, 2007.  If no objections are filed, review of the
18   Findings and Recommendation will go under advisement on that date.

19       If objections are filed, a response to the objections is due
20   August 8, 2007, and the review of the Findings and Recommendation
21   will go under advisement on that date.

22       IT IS SO ORDERED.

23                   Dated this   10th   day of   July      , 2007.

24

25

26                           /s/ Dennis James Hubel
                             Dennis James Hubel
27   _____  United States Magistrate Judge

28

21 - FINDINGS & RECOMMENDATION